665 So.2d 281 (1995)
Emily ANDERSON and Leon Skipwith, Appellants,
v.
STATE of Florida, Appellee.
Nos. 94-1928, 94-1937.
District Court of Appeal of Florida, Fifth District.
December 1, 1995.
Rehearing Denied January 3, 1996.
*282 Sharon Lee Stedman, of Sharon Lee Stedman, P.A., Orlando, Robert A. Leventhal, of Leventhal & Slaughter, P.A., Orlando, and Michael H. Hatfield, Umatilla, for Appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, Judge.
This is an appeal by Emily Anderson and Leon Skipwith of an order denying their motions to suppress. Because we find that the warrantless search conducted was not justified by exigent circumstances, we reverse.
During the hearing on the motion to suppress, the following evidence was adduced: on January 22, 1994, at approximately 7:30 a.m., Deputy Larry Herron of the Seminole County Sheriff's Office had been on patrol when he received a dispatch concerning the possibility of a burglary of an apartment at the Regency Granda Apartments.[1] Skipwith was the tenant; Anderson, his girlfriend, frequently resided there. When Herron arrived at the apartment, he found that the kitchen window was broken and raised, and saw the screen lying on the ground next to the building, but he was unable to see inside the apartment because of a curtain which was blocking his view. No one appeared to be home. Deputy Herron decided to treat the incident as a burglary in progress and asked an off-duty police officer named Jim Rick who worked at the apartments for a key. Rick was unable to produce a key; however, after the two men looked around, Deputy Herron discovered the front door was unlocked. He and Rick then entered the apartment and conducted a "room by room search for any possible burglar inside or anybody who had possibly lived in the apartment for their own safety."
Deputy Herron admitted that he found no one in this search and that, after his search, he was unable to determine even whether a burglary had occurred. Nonetheless, he remained in the apartment, dusting the windowsill and the window area for fingerprints and attempting to locate the tenant. Rick provided Deputy Herron with the tenant contact number kept in the office. This number produced no response, so Deputy Herron began to look around the apartment "to see if I could find anything lying around, business cards, anything that would give me an idea where I could reach Mr. Skipwith." In attempting to locate Mr. Skipwith, he searched a card table set up in the dining room and a desk in the master bedroom. His search produced a number of business cards, but he was unable to reach anyone at the numbers shown on the cards.
Deputy Herron testified that since he needed to get back on the road, he continued to look around the apartment for a clue to Skipwith's whereabouts. He noticed a small plastic shopping bag in the kitchen close to the point where he thought entry had been made. He could see inside the bag since it was standing open on the floor and it was full of paper. According to Deputy Herron, the paper in the bag looked like business receipts or restaurant receipts which he examined because he thought they might contain a phone number or address concerning Skipwith's place of business. He picked up some *283 of the receipts and noticed names or initials, two digits numbers on the left side and dollar amounts on the right side. He thought that they may be codes for different dishes served by Skipwith, since one of the business cards indicated he was in the catering business. Deputy Herron did not find any information concerning Skipwith's location, so he picked up still another batch of receipts lying under the first receipts and found more documents of the same kind. Then "right underneath" those receipts, he saw what appeared to be "tally sheets." This made him suspicious because he had seen such tally sheets when he worked in drug enforcement. After examining the tally sheets, he thought they might be connected with a gambling operation and called his sergeant to get his opinion on how to proceed.
Sergeant Lohr came over to the apartment, and Deputy Herron showed him the receipts. Lohr also thought that the tally sheets were connected with a gambling operation and told him to call Sergeant Gibson at the City/County Investigative bureau and explain what he had found. Sergeant Gibson advised Herron to make a warrantless seizure of some of the receipts and tally sheets, but cautioned him not to take so many that the seizure would alert Skipwith that anything had been taken. Deputy Herron left the apartment shortly after seizing the receipts and tally sheets since a maintenance man had just come on duty and agreed to secure the window.
On March 9, the court entered an order denying defendants' motion to suppress the items seized. In its order, the court found that sufficient exigent circumstances existed to justify Deputy Herron's initial warrantless entry into the apartment to determine whether a burglary had occurred or was in progress and to determine if anyone inside was in danger. The court further found that Deputy Herron had a lawful right to examine the contents of the bag found in the kitchen as part of his attempt to locate information concerning the occupant's whereabouts and to secure the apartment. In so holding, the court noted that Deputy Herron was acting in good faith and in accordance with his department's policy of attempting to contact the resident of the apartment. The court thus concluded that the deputy had lawfully reviewed the contents of the bag and was entitled to seize certain of its contents once he realized it contained receipts from an illegal bolita operation.
After denial of the motion to suppress, Skipwith pled nolo contendere to one count of racketeering and twelve counts of operating an illegal lottery. Anderson pled nolo to one count of racketeering and two counts of conducting an illegal lottery.
We reverse the denial of the motion to suppress because we conclude that when Deputy Herron had completed his search of Skipwith's home to locate the intruder and to ascertain no one was in need of assistance inside the apartment, the exigency that allowed the warrantless search of the premises had ended. Cf. State v. Haines, 543 So.2d 1278 (Fla. 5th DCA 1989). The desire to contact the owner did not justify any further search of the apartment or its contents, including the documents in the plastic bag. Other courts also have rejected the notion that the need to secure a person's property justifies a search once the exigencies which initially permitted entry onto the premises have ended. See, e.g., United States v. Parr, 716 F.2d 796, 814 (11th Cir.1983).[2] The officer was entitled to examine what was in plain view while on the premises.
It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." Id. Indeed, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. *284 2125, 2134, 32 L.Ed.2d 752 (1972); see also G.M. Leasing Corp. v. United States, 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977). No valid exigent circumstance warranted the search of the residence to find information concerning the tenant's whereabouts. Because the lower court erred in denying the motion to suppress, we reverse and remand for further proceedings.[3]
REVERSED and REMANDED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] The call had apparently been made by an unidentified neighbor on his way to work.
[2] The case principally relied on by the state is People v. Parra, 30 Cal. App.3d 729, 106 Cal. Rptr. 531 (Cal.Ct.App.), cert. denied, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973). Parra was expressly disapproved in United States v. Bute, 43 F.3d 531 (10th Cir.1994) and since Parra involved a commercial premises, we do not consider it to be persuasive.
[3] The question of the scope of evidence suppression has not been addressed in this appeal and we do not decide it.