797 So.2d 598 (2001)
Jose ESPIET, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2234.
District Court of Appeal of Florida, Fifth District.
August 24, 2001.
*599 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.

*600 ON MOTION FOR REHEARING

SAWAYA, J.
We grant the motion for rehearing filed by the State, withdraw our previous opinion and substitute the following in its place.
Jose Espiet (Espiet) appeals his judgments and sentences imposed after the jury found him guilty of attempted second-degree murder, aggravated assault on a law enforcement officer, and resisting a law enforcement officer without violence. Of the several issues Espiet raises, only three merit discussion and will be addressed in the following order: (1) whether the trial court erred in denying the motion for judgment of acquittal on the attempted second-degree murder charge; (2) whether the trial court erred in denying the motions for judgment of acquittal on the aggravated assault and resisting counts; and (3) whether the trial court erred in including eighteen points on the scoresheet for the use of a firearm.
This case demonstrates how perilous circumstances may befall overzealous law enforcement officers who attempt to apprehend a mentally disturbed man in his home without a warrant.
Espiet, fifty-six years old, has a history of psychiatric problems. Espiet became enraged when Mildred, his wife of twenty years, related to him that the woman he had been having an affair with called on the telephone. Espiet grabbed a tie-down rope from a cabana, wound it around Mildred's neck, and attempted to strangle her. Espiet repeatedly stated that he was going to kill her and threatened to take her heart out and eat it. Fortunately for Mildred, she extricated herself from Espiet's noose and sought refuge in the home of her in-laws (Espiet's elderly parents lived across the street from Espiet and Mildred). Espiet pursued her there and continued his attack. He subsequently retreated to his house and barricaded himself inside.
Law enforcement was summoned and deputies Englebright and Vowinkle arrived at the scene of the attack. They met with Mildred in the home of Espiet's parents and telephoned Espiet. Deputy Englebright informed Espiet that they could not leave until the matter was resolved. Espiet told Deputy Englebright that nothing happened, he just wanted to be left alone, and requested that the deputies leave. He subsequently relented and told Deputy Englebright that although he would not come outside, he would speak to the deputy through the screened front window of his home. Deputy Englebright believed that he had probable cause to make an arrest for a misdemeanor charge of domestic violence.
Deputy Englebright and Espiet met at the front window of Espiet's home. When Espiet put his hands on the window sill, Deputy Englebright seized the opportunity: he lunged through the screened-in window, apparently making it only halfway through, grabbed Espiet by the arms, and attempted to pull him out. Meanwhile, Deputy Vowinkle rounded the corner of the house to the specter of Deputy Englebright's posterior hanging out of the window. Suddenly, she saw Deputy Englebright completely vanish (she surmised at trial that instead of Deputy Englebright pulling Espiet out, Espiet pulled Deputy Englebright in). According to Deputy Englebright's testimony, he had no intention of entering the residence and did not even want to be inside the residence, but found himself inside anyway.[1]
*601 The two men ended up on the floor in the dining room. Espiet disappeared around a corner, but unfortunately for Deputy Englebright, he came back pointing a shotgun at the deputy, demanding that he leave. Instead of accepting Espiet's invitation to simply walk out, Deputy Englebright drew his own weapon and ducked towards the front door, only to find a chair wedged under the knob and the deadbolt locked with no key in it. Deputy Englebright and Espiet yelled at each other for several minutes before the situation reached a climax with each man mutually agreeing to lower his weapon. The two talked for several minutes before Deputy Englebright's sergeant told him to leave the home.
While the drama was unfolding inside, the SWAT team arrived and negotiators were in place. After Deputy Englebright was out of the house, the team talked Espiet into coming out. He was arrested and taken into custody.
As Espiet sat handcuffed in the back of a police car, he asked to see Mildred. She approached Espiet, battered and bruised. But when Espiet saw Mildred, he neither expressed concern for the injuries he inflicted on her nor displayed so much as a modicum of remorse for his attack on her. Amazingly (we say this mindful that Espiet has psychiatric problems), he instructed Mildredhis wife of twenty years whom he had just tried to murder because she confronted him about a call his paramour, Betsy, made to himto call Betsy back and advise her that he was indisposed and would not be able to see her that night after all.

Standard Of Review Of Denial Of Motion For Judgment Of Acquittal
The purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence presented by the state. See State v. Rivera, 719 So.2d 335, 337 (Fla. 5th DCA 1998). In moving for a judgment of acquittal, a defendant admits all facts and evidence adduced at trial, and all reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the state. Beasley v. State, 774 So.2d 649 (Fla.2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)); Hoffman v. State, 708 So.2d 962 (Fla. 5th DCA 1998). "If the evidence, when viewed in a light most favorable to the state, does not establish the prima facie case of guilt, the court should grant the motion." Thomas v. State, 743 So.2d 1190, 1192 (Fla. 4th DCA 1999) (citation omitted). We will proceed to apply this standard in resolving the issues before us.

The Attempted Second Degree Murder Conviction
The crime of attempted second-degree murder exists in Florida. Brown v. State, 790 So.2d 389 (Fla.2000) (approving this court's decision in Brown v. State, 733 So.2d 598 (Fla. 5th DCA 1999)); Kenon v. State, 780 So.2d 258 (Fla. 5th DCA 2001). Thus the trial court did not err in denying Espiet's motion for judgment of acquittal and we, therefore, affirm that conviction.

The Aggravated Assault And Resisting Without Violence Convictions
Espiet argues that the trial court erred in failing to grant his motion for *602 judgment of acquittal as to the aggravated assault and resisting without violence charges because the State failed to adduce evidence that the deputies were in the lawful performance of their duties when they entered Espiet's home without a warrant.
Both offenses have as elements the requirement that the officer was engaged in the lawful performance of his or her duties at the time of the offense. See §§ 784.021, 784.07, 843.02, Fla. Stat. (2000); Taylor v. State, 740 So.2d 89 (Fla. 1st DCA 1999). The courts generally agree that a law enforcement officer may not make a warrantless entry into a person's home to arrest the person for a misdemeanor offense. See M.J.R. v. State, 715 So.2d 1103 (Fla. 5th DCA 1998); Conner v. State, 641 So.2d 143 (Fla. 4th DCA), rev. denied, 649 So.2d 234 (Fla.1994); Ortiz v. State, 600 So.2d 530 (Fla. 3d DCA 1992); Johnson v. State, 395 So.2d 594 (Fla. 2d DCA 1981). When Deputy Englebright entered the house to arrest Espiet on the misdemeanor charge of domestic violence,[2] Deputy Englebright was not engaged in the lawful performance of his duties.
The State contends, however, citing Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), that the warrantless entry was proper because law enforcement officers may enter to arrest a felony suspect when exigent circumstances exist, such as where any delay would endanger the lives of officers and citizens. We agree that this is a correct statement of the law. See Saavedra v. State, 622 So.2d 952 (Fla.1993), cert. denied, 510 U.S. 1080, 114 S.Ct. 901, 127 L.Ed.2d 93 (1994). However, Deputy Englebright testified that he intended to arrest Espiet for the misdemeanor offense of domestic violence.
The State argues that despite Deputy Englebright's intent to arrest Espiet for a misdemeanor, the facts of this case clearly show that probable cause existed to arrest him for a felony. We conclude that this argument is without merit because the State failed to present evidence of exigent circumstances excusing the deputies' failure to obtain an arrest *603 warrant. See United States v. Burgos, 720 F.2d 1520, 1526 (11th Cir.1983); Wike v. State, 596 So.2d 1020, 1024 (Fla.1992). Mildred was at her in-laws' and Espiet, barricaded in his home, simply refused to come outside. He was not armed (he only armed himself after Deputy Englebright entered the house) and was not shouting threats at them. All communication was conducted via telephone (initially) and then through the screened window. The SWAT team and negotiators had been summoned and were in place. There was no reason for Deputy Englebright to force the situation. In fact, according to the testimony of Deputy Lucas, Deputy Englebright's actions were a surprise to his fellow deputies who were present at the scene. Absent valid consent or exigent circumstances, law enforcement may not cross the threshold of a residence without a warrant. Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Saavedra. Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, we conclude that the State failed to present competent sufficient evidence that the officers were engaged in the lawful performance of their duties. Therefore, the trial court erred when it failed to grant a judgment of acquittal on the charge of resisting without violence. Accordingly, we reverse Espiet's conviction for that charge.
However, as to Count II, aggravated assault on a law enforcement officer with a firearm, we must affirm that conviction based on State v. Barnard, 405 So.2d 210 (Fla. 5th DCA 1981), which is a decision that was neither cited by the parties in their briefs nor argued to this court during oral argument. Nevertheless, the State has cited it in its Motion for Rehearing and we conclude that it should be applied to the instant case. This court in Barnard held that, although a law enforcement officer is not in the performance of his legal duties when he enters an individual's home to make a warrantless arrest, the individual is not justified in using force to resist the illegal arrest.

The Scoresheet Errors
Lastly, Espiet's Criminal Punishment Code scoresheet was calculated using the aggravated assault on a law enforcement officer with a firearm as the primary offense. Eighteen points were added to the scoresheet total for the use of a firearm. Further, the three-year minimum mandatory sentence was imposed for the use of a firearm. At sentencing, defense counsel objected to the inclusion of the eighteen points for use of a firearm along with the imposition of the minimum mandatory sentence.
Use of a firearm is an essential element of aggravated assault on a law enforcement officer with a firearm. Drumwright v. State, 743 So.2d 1120 (Fla. 5th DCA 1999). In the instant case, a three-year mandatory minimum sentence was imposed based on Espiet's use of a firearm. § 775.087(2), Fla. Stat. (2000). We conclude, therefore, that it was error to add points for the use of a firearm on the sentencing scoresheet when the three-year mandatory minimum was imposed. White v. State, 714 So.2d 440 (Fla.1998); Val v. State, 741 So.2d 1199 (Fla. 4th DCA 1999); Lane v. State, 722 So.2d 288 (Fla. 5th DCA 1998).[3] Since no other offense for which Espiet was found guilty involved the use of a firearm, the inclusion of the *604 eighteen points cannot be justified by the other offenses. Accordingly, it was error to include the eighteen points on the score-sheet.

Conclusion
We reverse the conviction for resisting an officer without violence. We conclude that it was error to include the points for the firearm when calculating the score-sheet. The inclusion of those eighteen points affected the minimum sentence which could be imposed and, even though the minimum sentence was not imposed, this court cannot determine that the trial court would have imposed the sentence it did had it correctly calculated the score-sheet when Espiet was originally sentenced. A new scoresheet will have to be calculated and Espiet resentenced accordingly.
REVERSED and REMANDED.
THOMPSON, C.J., and PLEUS, J., concur.
NOTES
[1] He testified that:

I had no intent to be in the home. My intent was to solely grab a hold of his arms and attempt to get him to come outside the residence. When I grabbed a hold of him or went through the screen, I went past the point of no return, and I had to go on in because the majority of my body was inside. I couldn't back out. If I had been halfway through, I would have been out instead of in.
[2] The provisions of section 901.15(7) which allow a law enforcement officer to arrest a person for an act of domestic violence without a warrant do not permit the forcible entry into the person's home to effectuate the arrest based on a misdemeanor offense. See § 901.19(1), Fla. Stat. (1999); Green v. State, 632 So.2d 197, 198 (Fla. 3d DCA 1994) ("Section 901.19, Florida Statutes (1991), authorizes the police to enter a dwelling without a warrant only if the police are authorized to make a felony arrest."); Ortiz (holding that police cannot make a warrantless entry into a house in order to make a misdemeanor arrest); Johnson, 395 So.2d at 596 ("By the clear wording of the statute, the right of an officer to enter a building to make an arrest is limited to two situations: (1) where he holds an arrest warrant, regardless of the classification of the offense, and (2) where he has the power under section 901.15, Florida Statutes (1979) to make a warrantless arrest for a felony. Under state law, there is simply no authority given to a police officer to enter a building to effect a warrantless arrest for a misdemeanor."); Rucker v. State, 302 So.2d 490, 491 (Fla. 2d DCA 1974) ("An officer is not authorized to break open a door in a private dwelling in order to make an arrest without a warrant for a misdemeanor."); see also Benefield v. State, 160 So.2d 706 (Fla. 1964). We note with interest that the 1979 version of section 901.15 under consideration in Johnson specifically provided that an officer could arrest a person without a warrant if probable cause existed to believe a battery on the person's spouse had been committed, battery being a first-degree misdemeanor. See §§ 784.03(2), 901.15, Fla. Stat. (1979). Johnson specifically requires either a warrant or an arrest for a felony to permit the forcible entry into the person's home. Moreover, Johnson specifically requires exigent circumstances as a basis for a warrantless arrest for a felony, citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
[3] The State answers that White and Lane are distinguishable because those cases were decided under the sentencing guidelines as opposed to the instant case, which involved sentencing under the Criminal Punishment Code. However, rule 3.704(b), which implements the 1998 Criminal Punishment Code, specifically provides, "Existing case law construing the application of sentencing guidelines will continue as precedent unless in conflict with the provisions of this rule or the 1998 Criminal Punishment Code." There is no conflict in the pertinent provisions. The provision of the sentencing guidelines allowing additional points for possession of a firearm, rule 3.703(d)(1), is identical to rule 3.704(d)(17) implementing the Criminal Punishment Code.