834 So.2d 322 (2003)
Jeffrey DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-986.
District Court of Appeal of Florida, Fifth District.
January 3, 2003.
*325 Michael H. Hatfield of Michael H. Hatfield, P.A., Umatilla, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Jeffrey Davis appeals the judgment and sentences imposed following his plea of nolo contendere to one count of robbery with a firearm, three counts of aggravated assault with a firearm, and one count of possession of a firearm by a convicted felon. Davis entered his plea after the trial court denied his four motions to suppress. The trial court found that the motions to suppress were dispositive, and Davis reserved his right to appeal the adverse rulings. We reverse.

The Facts
Charges were filed against Tampa resident Jeffrey Davis after a series of fortuitous events led the police to discover the evidence that linked Davis to the armed robbery of a Leesburg Value Pawn pawn shop. The story unfolded when a concerned Tampa citizen, who observed the front door to his neighbor's residence open and the neighbor's dog wandering in the street, telephoned the police to report a possible burglary. The Tampa police responded, discovered the front door had been forced open, announced their presence, and, when they got no response, entered to check on the welfare of the residents. Once inside, the police observed that the home had been ransacked and saw in plain view what they later testified to as "possible narcotics, firearms, and items from a Value Pawn store." The police secured the residence and summoned a Tampa property crimes investigator.
When the investigator arrived, he was not concerned that the burglar was still present, and he knew that, except for the police, the house was empty. The investigator looked around the house to find items that would identify the residents. He saw a number of clear plastic baggies containing a white powdery substance and drug paraphernalia on the kitchen counter. He testified that it was "pretty obvious to me that it was illicit contraband." In fact, the powders tested positive for cocaine and methamphetamine.
In the ransacked bedroom, the investigator discovered a safe that had been pried open and saw in plain view 70-100 small manila envelopes with bar code stickers attached that had the words "Value Pawn" on them, business cards from Value Pawn stapled onto some of the envelopes, and nine nylon zippered bank bags that had been cut open. The investigator testified that it "seemed suspicious to me that these items would be found in the bedroom of a residence, or unusual at the very least." He also found, in plain view, numerous small tags with strings attached that obviously had been cut, which tags he described as the same type that would be attached to small pieces of jewelry. It was suspicious to the investigator that the firearms, narcotics, jewelry, and other collectible items were left behind by the burglars.
The investigator testified that as a result of his two-hour investigation, he decided to take the items "for safekeeping since it was an unsecured residence and I didn't want to leave the firearms, narcotics, and other high valuable [sic] items behind." He did not, however, take all such items. He admitted that when he was at the *326 house, he did not know to whom the items belonged or why they were there. "It was out of place, and I determined it to be of substantive or important to this case, and it was collected, yes." He had no idea that any pawn shop had been robbed prior to speaking with the manager of a Tampa-area local Value Pawn pawn shop later that day. This manager told him about the armed robbery of the Leesburg store, which is the robbery charged in the instant case. The investigator checked with the Leesburg police, who had spoken to the witnesses present when the Leesburg Value Pawn pawn shop was robbed, and obtained more information about the robbery. Finally, after a match was made of the numbers on the pawn tags recovered at Davis's house with the pawn tag numbers of the stolen items, Davis emerged as the prime suspect. Several days later, the police obtained a search warrant and went back to the residence and secured more items.
The issue we must resolve is whether the police legally entered Davis's home without a warrant and properly seized the items that were in plain view. Resolution of this issue necessarily requires us to apply the law relating to warrantless searches, the exigent circumstances exception to the warrant requirement, and the plain view doctrine.

The Law Relating to Warrantless Searches, Exigent Circumstances And The Plain View Doctrine
Article I, section 12 of the Florida Constitution and the Fourth Amendment to the United States Constitution give the citizens of Florida the right to be secure in their homes against unreasonable searches and seizures. The seizure of items from a person's home without a warrant based on probable cause violates this right, rendering the items inadmissible in evidence. Art. I, § 12, Fla. Const. The principles embodied in these constitutional provisions "evince[ ] the axiom that privacy is not a gratuity which we hold at the whim of our government." Hornblower v. State, 351 So.2d 716, 717 (Fla.1977). Rather, privacy in the home is a constitutional right included within the "catalog of indispensable freedoms"[1] guaranteed to each individual and in accordance with our chosen form of democratic government, the judiciary, not the police, has been designated its guardian. See, e.g., United States v. Ivy, 165 F.3d 397, 404 (6th Cir. 1998) ("[T]his Court must remain vigilant in its role as a guardian of the Constitution and its protections.").
The courts have consistently held that a warrantless search of a home is presumed illegal. M.J.R. v. State, 715 So.2d 1103 (Fla. 5th DCA 1998); Anderson v. State, 665 So.2d 281 (Fla. 5th DCA 1995); see also Espiet v. State, 797 So.2d 598, 603 (Fla. 5th DCA 2001). This presumption may be overcome if the state demonstrates that exigent circumstances existed that allowed the police to invade the sanctity of the home without a warrant or that valid consent, which is not an issue in the instant case, was given for the search. Espiet; M.J.R.
The exigent circumstances exception to the warrant requirement is premised on the generally accepted notion that "[t]he right of police to enter and investigate an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers and derives from the common law." Zeigler v. State, 402 *327 So.2d 365, 371 (Fla.1981) (citations omitted), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). The sine qua non of the exigent circumstances exception is "a compelling need for official action and no time to secure a warrant." Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); see also Rolling v. State, 695 So.2d 278, 293 (Fla.1997) ("Of course, a key ingredient of the exigency requirement is that the police lack time to secure a search warrant.").
There is no catalog of all of the exigencies that may allow a warrantless search of a residence primarily because "[t]he reasonableness of an entry by the police upon private property is measured by the totality of existing circumstances." Zeigler, 402 So.2d at 371. Nevertheless, precedent provides us the necessary guidance and we derive therefrom that exigencies or emergencies related to the safety of persons or property may support a warrantless entry into a home. See Rolling; Arango v. State, 411 So.2d 172 (Fla.), cert. denied, 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982); Richardson v. State, 247 So.2d 296 (Fla.1971); Walker v. State, 617 So.2d 404 (Fla. 3rd DCA 1993); State v. Mann, 440 So.2d 406 (Fla. 4th DCA 1983). Hence, the police may enter a home to investigate a suspected burglary or to check on the safety of its residents, as those situations are generally considered exigent circumstances. See State v. Craycraft, 704 So.2d 593 (Fla. 4th DCA 1997); State v. Haines, 543 So.2d 1278 (Fla. 5th DCA 1989); see also Anderson.
An entry based on exigent circumstances must be limited in scope to its purpose. Rolling, 695 So.2d at 293 (citing Anderson). Therefore, the police may not continue the search once it is determined that no exigency exists. Id. Accordingly, if the police enter a home under exigent circumstances and, prior to making a determination that the exigency no longer exists, find contraband in plain view, they may lawfully seize the illegal items. See Haines. Summoning other officers to the scene a reasonable time after entry is made to further investigate is permissible as long as the investigation is considered one continuous episode. See Craycraft, 704 So.2d at 593 (citing Allen v. State, 638 So.2d 577 (Fla. 1st DCA 1994), review denied, 649 So.2d 232 (1994); Wooten v. State, 398 So.2d 963 (Fla. 1st DCA 1981)). However, if the police determine the exigency that initially allowed their entry into the residence no longer exists, any subsequent search is illegal and any contraband discovered pursuant to the illegal search is inadmissible. See Anderson.
The plain view doctrine generally provides the police authority to seize illegal contraband after entry is made under exigent circumstances. Under the plain view doctrine, an item may be seized without a warrant if 1) the police are legitimately in a place where the item may be viewed; 2) the incriminating character of the item is immediately apparent; and 3) the police have a lawful right of access to the item. Rimmer v. State, 825 So.2d 304, 313 (Fla.), cert. denied, ___ U.S. ___, 123 S.Ct. 567, 154 L.Ed.2d 453 (2002). In order to satisfy the second requirement, the police must have probable cause to associate the item with criminal activity. Rimmer; Jones v. State, 648 So.2d 669, 678 (Fla.1994) ("This `immediately apparent' requirement is another way of saying that at the time police view the object to be seized, they must have probable cause to believe that the object is contraband or evidence of a crime.") (citations omitted).
Having distilled the applicable legal principles from the case law, we will next analyze how the facts apply to the law to resolve the issue before us.

*328 Analysis

The police were properly in the house based on the exigency of the apparent burglary. The circumstances presented a compelling need for immediate action and there was no time to secure a warrant. Once inside, they observed the white powder in plain view, and the incriminating nature of that powder was immediately apparent. They called for an investigator to conduct the investigation and that investigator arrived a reasonable time after the initial entry of the home. Hence, the investigator's entry into the house was a continuation of the police presence and was proper.
Other than the cocaine, which is not an issue in this case, the bigger question concerns whether the "incriminating nature" of the other items seized on the day of the initial investigation, which were in plain view, was immediately apparent. Those items included numerous jewelry tags, manila envelopes with Value Pawn labels or stickers, zippered bank bags, firearms, and pieces of jewelry. Certainly the quantities of these items was an eyebrow-raiser and justified the investigator's suspicions. However, he did not testify that he suspected that the items were the fruits of a robbery; he stated only that the presence of the items in the bedroom was suspicious or unusual at the very least. At the time the items were seized, the investigator was not aware of any pawn shop robberies and did not link the items to the robberies until subsequently being directed to the Leesburg police. Furthermore, the fact that there was a safe in the bedroom that had been pried open would tend to suggest that the items belonged to the residents and were not the bounty of unlawful activity. Moreover, the investigator's testimony was that he took items for "safekeeping," not that he took them as evidence of a crime.
Thus, all the investigator had was a suspicion that the items were connected with criminal activity. That is not sufficient for their warrantless seizure. Jones. Once the exigency ended, i.e., once the house was searched and no burglar or person in need of aid was located, and the cocaine was seized, there was no further excuse for the police to be in the residence and seize items they did not have probable cause to believe were involved with criminal activity. The investigator's explanation that he spent two hours searching for information on how to contact the residents is not, as we explained in Anderson, an exigent circumstance that supports a warrantless search of a home.
As to the warrant that was subsequently obtained, it was the product of the investigator's illegal seizure of the items on the date of the initial search. Because the warrant was based solely on the impermissible conduct of the investigator, all the evidence seized pursuant to the initial search is the fruit of the poisonous tree and is inadmissible. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Conclusion
We conclude that the trial court erred in denying the first motion to suppress. Our resolution of the issues relating to the first motion renders moot the issues relating to the other suppression motions filed by Davis. Because the motion was declared dispositive, we reverse Davis's convictions and sentences.
REVERSED.
THOMPSON, C.J. and PALMER, J., concur.
NOTES
[1] Brinegar v. United States, 338 U.S. 160, 180-81, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting).