LAWSON, C.J.
Hugh Patrick Durham appeals his conviction for resisting an officer with violence and touching, striking, or causing bodily harm to a police dog in violation of sections 843.01 and 843.19(3), Florida Statutes (2013). He challenges the resisting charge on grounds that the evidence was insufficient to support a finding that the police were in the lawful execution of a legal duty, an essential element of the crime in this case, because they had unlawfully entered his home at the time he resisted the officer.[1] See, e.g., Espiet v. State, 797 So.2d 598, 602 (Fla. 5th DCA 2001) (reversing resisting, charge “because the State failed to adduce evidence that the deputies were in the lawful performance of their duties when they entered Espiet’s home without a warrant”). Durham’s counsel raised this issue below with a timely motion for judgment of acquittal, which the trial court denied. Reviewing the matter de novo, see Pagan v. State, 830 So.2d 792, 803 (Fla.2002), we reverse.
“Absent consent, a search warrant, or an arrest warrant, a police officer may enter a private home only when there are exigent circumstances for the entry.” Tillman v. State, 934 So.2d 1263, 1272 (Fla.2006); see also Espiet, 797 So.2d at 603 (“Absent valid consent or exigent circumstances, law enforcement may not cross the threshold of a residence without a warrant.”) (citing Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). In this case, it is undisputed that there was no consent to entry and that officers had not obtained a warrant authorizing entry into Durham’s residence — leaving the question of exigent circumstances. To justify an emergency entry into a home by police officers, the State must demonstrate that “an objectively reasonable basis exist[ed] for the officer to believe that there is an immediate need for police assistance for the protection of *1076 life....” Seibert v. State, 923 So.2d 460, 468 (Fla.2006). “Whether sufficient exigent circumstances exist is evaluated based on the totality of the circumstances.” Id. ,.
Here, there was no objectively reasonable basis for officers to believe that anyone in Durham’s residence needed their assistance. The officers had responded to a report that a man and woman were in a heated verbal altercation outside the residence when the man physically forced the woman into the residence. Four officers responded to a quiet scene, and began knocking on the front door. When no one responded, police spoke to the 911 caller, who confirmed the location, and spoke to neighbors, who confirmed that the witness’s description of the man and woman involved in the altercation matched the description of the home’s two residents (Durham and his girlfriend). Officers then found an open window at the rear of the home and used a stick to move curtains to the side, at which point they observed Durham and his girlfriend lying on a bed, attempting to hide themselves under a sheet. After officers directed the pair to go to the front door, Durham and his girlfriend stood up and left the bedroom. After a few minutes, Durham’s girlfriend exited the residence through the front door to speak with the officers, as they had directed; Durham instead went into another room of the house where officers could not observe him, and did not come out.
Durham’s girlfriend attempted to rec-lose the front door after exiting, but the officers held it open. She looked disheveled and her clothing was askew, but had no signs of injury. She explained that she was dizzy due to low blood sugar, so the officers requested emergency medical personnel to assist her. Durham’s girlfriend told officers that Durham had gone to the bathroom and she was not sure why he was refusing to come out. At this point, officers had no evidence that Durham was armed, that he might harm himself, or that anyone else was present in the house. After ten or fifteen more minutes, with Durham still declining to exit or communicate with police, one of the officers threatened to come into the house with his police K-9 to force Durham out. After receiving no response to this threat, the officers entered the residence with the K-9 and found Durham hiding under a sheet in a closet. Durham’s charged conduct occurred in response to an officer’s attempt to physically remove Durham from the closet, using the K-9.
Viewing' the totality of circumstances known to the officers at the time they entered the residence, there was no objective basis for the officers to fear for anyone’s safety. The assumed victim — Durham’s girlfriend — was no longer in the house. The officers understood that only Durham remained. And, they had observed him walking inside the residence with no visible injury or infirmity. It was also objectively clear that Durham simply did not want to talk with the police. The only logical explanation given by an officer at trial as to the reason for his subjective belief that Durham may have been in peril was the K-9 officer’s testimony that once he had threatened to force Durham out using his K-9, this threat should have prompted any rational and healthy person to exit the residence in order to avoid the painful experience of being attacked by a police dog. Although this subjective explanation makes sense, it was not enough to warrant entry into the home in light of all other circumstances known to police. We also note the obvious erosion to Fourth Amendment protection that would occur if the courts were to sanction a procedure by which police could manufacture an exigency by threatening physical harm to a per *1077 son in his .or her home unless they exit. Cf. Calloway v. State, 118 So.3d 277, 280 (Fla. 5th DCA 2013) (“Allowing police to use a resident’s reaction to their presence at the home and contemporaneous clear expression of unwillingness to engage with the officers as ‘reasonable suspicion’ to justify hauling the resident out of the home for a forced encounter would obviously render the consensual nature of the encounter illusory.”).
Accordingly, we reverse Durham’s conviction and sentence for resisting an officer with violence. The other conviction, unchallenged on appeal, is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
TORPY and BERGER, JJ., concur.

. Section 843.01 can also be violated when an officer is attempting an arrest. However, neither side has argued, nor is there evidence to support, that the officers were attempting to arrest Durham when they entered his home.