# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-4537
_____

THOMAS A. SOSNOWSKI,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Ross M. Goodman, Judge.

April 17, 2018

ROWE, J.

Thomas Sosnowski appeals his convictions and sentences for battery on a law enforcement officer and resisting an officer with violence, contending that the trial court erred by denying his motion for judgment of acquittal. He argues that at the time of their encounter with him, the police officers were not engaged in the lawful performance of a legal duty and that there was neither probable cause nor exigent circumstances to support the officers' warrantless entry into his backyard. We disagree and affirm. [1]

---

[1] Sosnowski raises three additional arguments on appeal, which we affirm without further comment.

*Facts*

The confrontation that ended in Sosnowski's arrest began when his wife Gina Garza called the Department of Children and Families (DCF) because she feared for her safety and the safety of their five-year old son. Ordinarily, a DCF employee would respond to the call and perform a welfare check. However, this was not DCF's first encounter with Sosnowski. Sosnowski had previously threatened DCF employees, and during this particular call, Garza reported that Sosnowski threatened to dismember DCF employees and to throw their body parts into a neighbor's yard if DCF entered his home. Garza was concerned that if a DCF employee responded without backup, Sosnowski would become violent and lock the employee and Garza inside the home. Based on Garza's reports, DCF requested assistance from the police to perform the welfare check.

When the DCF employee and the police arrived at the home, they were unable to approach the front door. The home was a fortress. Sosnowski had erected a number of barriers, including a sharp, padlocked, picket-style fence around the front yard. He had equipped the home with customized locking doors and opaque, inoperable windows. The police officers called Sosnowski on the phone, and he emerged from the home with his son on his shoulders. The DCF employee and the officers were unable to talk to the child or physically assess the child for injuries because Sosnowski remained on the opposite side of the fence. When the police officers informed Sosnowski they were conducting a welfare check on Garza and his son, Sosnowski reentered the home with his son, ordered Garza to go outside, and then locked the doors behind him.

As Garza exited the home and slowly approached the fence where the officers were standing, she appeared to be terrified. The officers observed fresh bruises on her face, chest, and neck. Garza told them that the injuries were inflicted by Sosnowski. As Garza spoke to the DCF employee, the officers heard a loud noise, and Garza exclaimed, "He just locked me out of the house. He just put the bar across the door." Garza was concerned for her child's safety because Sosnowski told her that she would never see her son again.

2

The officers attempted to reestablish contact with Sosnowski. But because Sosnowski had customized the windows with double-ply plexiglass to prevent outsiders from seeing in, the officers were unable to see inside the home to ascertain the child's whereabouts.

When it was clear to the officers that they could not safely enter the home, they commanded Sosnowski to come outside. Sosnowski refused. He also declined to answer multiple telephone calls. Based on Garza's initial report, their observations of her injuries, their interaction with Sosnowski, Sosnowski's retreat into the home, their knowledge of the home's many fortifications, and Garza's fear that she would never see her son again, the officers requested backup assistance from the SWAT team. When the team arrived, the officers briefed them on Sosnowski's prior violent threats to DCF. The team learned of the domestic violence allegations, the home's fortifications, Sosnowski's access to weapons, and the existence of a possible hostage situation. Their primary objective was to ensure the five-year-old child's safety.

The SWAT team quickly established a perimeter around Sosnowski's backyard, which was enclosed by a six-foot privacy fence. At this point, Sosnowski reemerged and was walking back and forth from inside the home to the backyard. The SWAT team announced their presence and commanded Sosnowski to get on the ground. Sosnowski refused to comply and retreated towards the home. After several unheeded commands to halt, one of the officers deployed a foam baton, striking Sosnowski. Sosnowski started low-crawling back towards the home to avoid the shots. The officers again commanded Sosnowski to stop, but to no avail. The officers then scaled the fence to prevent Sosnowski from reentering the home. Sosnowski physically fought with the officers before they were able to detain him. As two officers secured Sosnowski, another officer rushed inside the home and brought the child out to safety. After a jury trial, Sosnowski was convicted of battery on a law enforcement officer[2] and resisting an officer with violence.

---

[2] Sosnowski was charged by information with two counts of battery on a law enforcement officer, but the jury found him guilty of only one count.

*Analysis*

We review a trial court's denial of a motion for judgment of acquittal de novo to determine if the evidence is legally sufficient to sustain a conviction. *Jones v. State*, 790 So. 2d 1194, 1196 (Fla. 1st DCA 2001). "If, after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). There must be competent, substantial evidence to support the elements of the crime and to support the verdict and judgment. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981).

A conviction for battery on a law enforcement officer and resisting an officer with violence requires proof that the officers were engaged in the lawful performance of a legal duty at the time of the charged conduct. §§ 784.07(2)(b) & 843.01, Fla. Stat. (2015); *see also Espiet v. State*, 797 So. 2d 598, 602 (Fla. 5th DCA 2001). Sosnowski argues that the charges against him should have been dismissed because the police officers had no authority to enter his backyard and home without a warrant and thus were not engaged in the lawful performance of their duties at the time of the charged offenses. The State argues that the officers were engaged in the performance of a lawful duty at the time of their encounter with Sosnowski because the officers had probable cause to arrest Sosnowski for domestic violence. The State also contends that exigent circumstances existed to allow them to enter the backyard and home without a warrant in order to secure the child's safety.

Probable cause sufficient to justify an arrest exists "where the facts and circumstances, as analyzed from the officer's knowledge, special training and practical experience, and of which he has reasonably trustworthy information, are sufficient in themselves for a reasonable man to reach the conclusion that an offense has been committed." *Dep't of Highway Safety & Motor Vehicles v. Favino*, 667 So. 2d 305, 309 (Fla. 1st DCA 1995). A law enforcement officer may arrest a person without a warrant when there is probable cause to believe that the person has committed an act of domestic violence. *See* § 901.15(7), Fla. Stat. (2015). The officers in this case were informed that Garza called DCF because

she feared Sosnowski. When the officers arrived, they observed fresh bruises on Garza's face, chest, and neck. Garza indicated that the bruises were inflicted by Sosnowski. Viewed in the light most favorable to the State, the facts support the trial court's findings that the officers had probable cause to arrest Sosnowski.

But, while the evidence of Garza's abuse provided the officers sufficient probable cause to arrest Sosnowski without a warrant, the evidence of abuse *alone* is not enough to support a *warrantless entry into his backyard. See State v. Markus*, 211 So. 3d 894, 909 (Fla. 2017) ("Florida courts have [] found probable cause for minor offenses insufficient to justify warrantless home searches and arrests."); *Espiet*, 797 So. 2d at 602 ("The courts generally agree that a law enforcement officer may not make a warrantless entry into a person's home to arrest the person for a misdemeanor offense."). However, where exigent circumstances for the entry are present, a police officer may enter a private home without a warrant. *See Payton v. New York*, 445 U.S. 573, 576 (1980). Exigent circumstances were present here. At the time the officers entered Sosnowski's backyard and home, they had an objectively reasonable belief that a five-year-old child was in danger.

Public safety has long been recognized as an exigent circumstance permitting warrantless entry into a residence. *See Riggs v. State*, 918 So. 2d 274, 279 (Fla. 2005) ("The kinds of exigencies or emergencies that may support a warrantless entry include those related to the safety of persons or property, as well as the safety of police.") (citing *Rolling v. State*, 695 So. 2d 278, 293 (Fla. 1997)); *Markus v. State*, 160 So. 3d 488, 492 (Fla. 1st DCA 2015) (stating "[t]o rebut the presumed illegality of warrantless entry by police officers, the exigent circumstance must involve a threat to the safety of the public, property, or police which required immediate action by officers with no time to obtain a warrant"). "To justify an emergency entry into a home by police officers, the State must demonstrate that 'an objectively reasonable basis exist[ed] for the officer to believe that there is an immediate need for police assistance for the protection of life . . . .'" *Durham v. State*, 174 So. 3d 1074, 1075-76 (quoting *Seibert v. State*, 923 So. 2d 460, 468 (Fla. 2006)).

5

Immediate entry into Sosnowski's backyard and home was necessary for the officers to ensure the safety of a five-year-old child. The sole purpose of the officers' presence at the home was to conduct a welfare check of Garza and the child and to determine whether they were in danger. *See* § 39.301, Fla. Stat. (2015) (outlining the procedure for initiating protective investigations). Upon arriving, Garza presented with "fresh" bruises and identified Sosnowski as her abuser. Moments later, Garza heard Sosnowski lock a bar across the front door, her son still inside. Garza indicated to the officers that Sosnowski told her she would not see her son again. The officers also learned about the unique layout of the home, including the custom locks, windows, and doors that made the home nearly impenetrable. They knew Sosnowski had several bladed weapons hidden around the home and purposely placed in the yard. They had no way to ascertain the child's whereabouts inside the fortress. The officers also knew Sosnowski's history of violent threats towards DCF's employees, one reported that very day. Sosnowski refused to exit the home after the officers made several attempts to contact him. The uncertainty of the child's location coupled with Sosnowski's evasiveness provided an objectively reasonable basis for the officers to believe that the child was in danger and to enter the home without a warrant to secure the child's safety.

Notwithstanding these circumstances, Sosnowski argues that because the officers had observed the child on Sosnowski's shoulders from across the fence early in the encounter, there was no reason to believe the child continued to be in danger when Sosnowski exited the home into the backyard, leaving the child inside the house. However, as we observed in *C.L.L. v. State*,

> It is immaterial whether an actual emergency existed in the residence; only the reasonableness of the officer's belief at the time of entry is considered on review. The inquiry must be undertaken in light of the totality of the circumstances confronting the officers, including, in many cases, a need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences.

6

115 So. 3d 1114, 1117 (Fla. 1st DCA 2013) (internal citations and quotations omitted).

Although the officers had indeed observed the child earlier, Sosnowski had taken the child back into the home, where the officers could no longer observe him. At the time the officers entered the backyard, they had no knowledge of whether the child was safe. The officers' common-sense interpretation of an increasingly dangerous situation prompted certain action and that action fit squarely within the boundaries of the Fourth Amendment. Allowing a five-year-old child to remain in a fortified home with a hostile and potentially violent aggressor with access to multiple weapons has "the potential for serious consequences" prompting the "need for an on-the-spot judgment based on incomplete information . . . ." *Id.* The officers in this case made precisely such a judgment. "The resulting invasion of privacy is one that prudent, law-abiding citizens can accept as the fair and necessary price of having the police available as a safety net in emergencies." *Ortiz v. State*, 24 So. 3d 596, 602 (Fla. 5th DCA 2009) (citing *Riggs*, 918 So. 2d at 282-83).

Because they had probable cause to arrest Sosnowski for domestic violence and exigent circumstances existed, the officers were lawfully executing a legal duty at the time of their encounter with Sosnowski. Accordingly, we hold that the trial court properly denied judgment of acquittal and affirm Sosnowski's convictions for battery on a law enforcement officer and resisting an officer with violence.

ROBERTS and WETHERELL, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Megan Long, Assistant Public Defender, Tallahassee, for Appellant.

7

Pamela Jo Bondi, Attorney General, and Samuel B. Steinberg, Assistant Attorney General, Tallahassee, for Appellee.