HARRIS, J.
The State of Florida appeals the trial court's order granting a motion to suppress, arguing that the trial court erred in partially suppressing evidence found in plain view after law enforcement officers entered Travis Archer's house and backyard due to exigent circumstances. Archer cross-appeals, arguing that the trial court erred in concluding that the officers had the authority to enter his home based on exigent circumstances. We affirm that part of the order upholding the initial entry based upon exigent circumstances and reverse that part of the order which suppressed the evidence obtained after re-entry of the premises.
On April 8, 2017, the Ponce Inlet Police Department ("PIPD") received a call concerning possible animal abuse. The caller specifically described sounds of a dog yelping and being beaten, provided dispatch with an address, and stated he had a confrontation with the person who lived there. Officer Bines was one of two officers to respond to the scene. Upon arrival, Bines, wearing a body camera, noticed an individual pacing behind a nearby fence and recalled hearing the person behind the fence saying something to the effect of "sit, get down, [or] lay down" and the sound of what could have been striking flesh. No other sounds were heard. After noticing the individual move from the fenced area to the back of the house, Bines proceeded to the front door. When Bines knocked on the front door, Archer answered, stepped out and closed the door behind him, speaking to the officers through the screen door.
Bines told Archer that he was there because the PIPD received a complaint in reference to possible animal abuse. Archer responded, "Yeah, my dog bit me, and I hit him a couple of times." Archer then offered, "I can show you the mess he made in the house. I tried to discipline him, and he bit me. So I hit him." Bines asked Archer if he and the other officer could come in and take a look around, but Archer refused. Instead, Archer invited the officers to observe the mess in the home that the dog created by allowing them to look through the glass from the officer's current location outside the screen door.
Officer Bines advised Archer that he had "probable cause" to enter his house, and that Archer could either let them in voluntarily or the officers can "go another route" which would not "end up being good" for Archer. Bines testified that at that time of morning, obtaining a search warrant would have taken several hours and in light of what he had already seen and heard, obtaining a warrant was not feasible. Bines followed Archer towards the backyard of the residence. When they approached the rear of the house, Archer pointed towards the dog, that was in a corner consistent with where Bines had heard the noises when he was outside the residence. The dog was tied up in the corner against the fence with his tongue hanging out and bloodied. It was then when Bines determined that the dog was dead. Bines asked Archer, "Seriously?" to which Archer responded, "He bit me." Bines then instructed Archer to turn *1002 around, handcuffed Archer, and advised Archer of his Miranda [1] rights. After being read his Miranda rights, Archer made several incriminating statements. After securing Archer in the police car, the officers re-entered Archer's home and yard and took pictures of the crime scene. At some later point, police secured the dog's body.
Archer was charged by information with violating section 828.12, Florida Statutes (2017) ("Cruelty to Animals"). Archer moved to suppress any and all evidence seized from his home including, but not limited to, the canine remains, photographs of the interior of the home, and any statements he made. Archer argued that there was no exigent circumstances allowing a warrantless entry into his home and there was no legal basis to extend the "medical emergency" exception to justify the warrantless entry out of concern for the animal.
The trial court granted in part and denied in part Archer's motion to suppress. The court found that there were exigent circumstances to allow the initial warrantless entry into Archer's home. However, the court reasoned that the exigency was over once it was determined that the dog was dead. Therefore, the court held that the police officers had no justification to re-enter and search the residence or yard without a warrant. Consequently, the court suppressed all evidence obtained after police re-entered the home including the photographs taken, any related bodycam footage, and the canine remains. In his cross-appeal, Archer argues that the trial court erred by not suppressing all evidence obtained after the initial warrantless entry into his home because the State failed to show the existence of exigent circumstances.
While warrantless searches of a home are presumed illegal, Anderson v. State, 665 So.2d 281, 283 (Fla. 5th DCA 1995), an officer may enter a private home or property when there are exigent circumstances for the entry. Durham v. State, 174 So.3d 1074, 1075 (Fla. 5th DCA 2015). Exigent circumstances is a well-established exception to the warrant requirement. Riggs v. State, 918 So.2d 274, 278 (Fla. 2005). In order for this exception to apply, the State must "demonstrate a 'grave emergency' that 'makes a warrantless search imperative to the safety of the police and of the community.' " Id. (quoting Illinois v. Rodriguez, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ). "An entry is considered 'imperative' when the government can show a 'compelling need for official action and no time to secure a warrant.' " Id. at 279 (quoting Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ). The reasonableness of a warrantless entry based upon exigent circumstances is measured by the totality of existing circumstances. Zeigler v. State, 402 So.2d 365, 371 (Fla. 1981). The Florida Supreme Court explained the exception this way:
The kinds of exigencies or emergencies that may support a warrantless entry include those related to the safety of persons or property, as well as the safety of police. Of course, a key ingredient of the exigency requirement is that the police lack time to secure a search warrant .... Moreover, an entry based on an exigency must be limited in scope to its purpose. Thus, an officer may not continue her search once she has determined that no exigency exists.
Riggs, 918 So.2d at 279 (quoting Rolling v. State, 695 So.2d 278, 293 (Fla. 1997) ). This exception is premised on the notion that "[t]he right of police to enter and investigate an emergency, without an accompanying intent either to seize or arrest, is inherent *1003 in the very nature of their duties as peace officers and derives from the common law." Davis v. State, 834 So.2d 322, 326-27 (Fla. 5th DCA 2003) (citing Zeigler, 402 So.2d at 371 ).
The "feared medical emergency" is a particular kind of exigent circumstance. This Court, in an en banc opinion, addressed the feared medical emergency exception to the warrant requirements articulated in Riggs and the now well-recognized community caretaking function of the police officers. Ortiz v. State, 24 So.3d 596, 597 (Fla. 5th DCA 2009). In Ortiz, this Court upheld the trial court's denial of the motion to suppress, finding that the officer had reasonable grounds to believe medical attention was needed and the officer had reasonable grounds to connect the feared emergency to the house that was entered. Id. at 602-03.
Although both Riggs and Ortiz involved feared medical emergencies of persons, this Court in Brinkley v. County of Flagler, 769 So.2d 468 (Fla. 5th DCA 2000), held that law enforcement's warrantless entry onto a defendant's property to check on the well-being of animals was justified based on the emergency exception to the warrant requirement. Brinkley involved a citizen complaining that a large number of animals were being kept in unhealthy conditions by the defendants. Id. at 469. Upon arriving at the defendant's farm, a deputy and animal cruelty investigator were overwhelmed by a nauseating smell of animal waste. Id. After calling out loudly and receiving no response, they entered through the unlocked front gate of the property. Id. at 470. This Court held that "entry onto the defendant's property under these circumstances was constitutionally permitted." Id. at 472 (citing Wisconsin v. Bauer, 127 Wis.2d 401, 379 N.W. 2d 895 (Wis. Ct. App. 1985) ). This Court found that law enforcement did not enter the property with an intent to either arrest or search, and "any reasonable person would also have concluded that an urgent and immediate need for protective action [for the animals] was warranted." Id. While Brinkley was a civil forfeiture case, the Fourth Amendment principles are no different in this case.[2]
*1004 Archer's attempt to distinguish Brinkley from the facts in this case is unpersuasive. Archer argues that, unlike in Brinkley, here there were no sounds from an injured animal, no signs of blood or a fight, and no alarming odor to justify the warrantless entry into his home. Archer further argues that the single sound heard by Bines did not signify a grave emergency or that a dog needed immediate protection.
The trial court's findings to the contrary were supported by the totality of the circumstances. Archer's neighbor called to report possible animal cruelty in progress, advising that he heard a dog "yelping" and possibly being beaten. The responding officers found the house the caller had described, as evidenced by the presence of a man in the back of a house, after midnight, pacing behind the fence. Bines heard the man say "get down [or] lay down," and heard what appeared to be something striking flesh. When Bines contacted Archer, Archer advised Bines that he had a dog, that the dog had bitten him, and that he struck the dog twice. The trial court found at that point, prior to their entering the residence, the officers had reasonable grounds to believe that there was an urgent and immediate need to check on the safety and well-being of the dog and to connect the feared emergency to the house that they entered. Additionally, the trial court found that at that point, the officers had no intent to arrest Archer or search his home or yard. The trial court's findings are supported by competent, substantial evidence. Applying this Court's ruling in Brinkley, the exigent circumstances exception applies to animals, and entry onto Archer's property under these circumstances was constitutionally permitted.
In its appeal of the suppression order, the State argues that the trial court erred in suppressing the evidence found in plain view after the officers' initial entry into Archer's house and backyard. First, the State argues that the canine remains in plain view were properly seized. Second, the State argues that the photographs, bodycam footage, and canine remains in plain view were part of the same continuous episode and thus, it was lawful for the officers to re-enter the home to take photos and video. The trial court found that any exigency dissipated after the dog was dead, and at that point, the officers were not entitled to search Archer's home without a warrant. On this point, we find that the trial court erred and reverse.
Entry into a residence based on exigent circumstances must be limited in scope to its purpose; therefore, police may not continue their search once it is determined that the exigency no longer exists. Davis v. State, 834 So.2d 322, 327 (Fla. 5th DCA 2003) (citing Rolling, 695 So.2d at 293 ). "If the police enter a home under exigent circumstances and, prior to making a determination that the exigency no longer exists, find contraband in plain view, they may lawfully seize the illegal item." Id."The plain view doctrine provides that items in plain view may be seized when (1) the seizing officer is in a position where he has a legitimate right to be, (2) the incriminating character of the evidence is immediately apparent, and (3) the seizing officer *1005 has a lawful right of access to the object." Pagan v. State, 830 So.2d 792, 808 (Fla. 2002).
The first item that the trial court suppressed was the canine remains. The incriminating nature of the dog's condition was plainly evident to Bines before he determined the dog was dead. It was lying down in the corner of the backyard next to the fence where Bines had heard Archer saying "Sit" and heard what sounded like something hitting flesh. It was lying listless in an odd position. The dog appeared to be bound and gagged and had a bloodied tongue. Bines made these observations while the exigency still existed and before he determined that the dog was dead. It was not necessary to further investigate-the dog's body was incriminating in nature and immediately apparent to the officers. The trial court improperly applied the plain view doctrine to the canine remains, and the order granting the suppression of those remains is reversed.
The trial court further erred in suppressing the photographs and bodycam footage obtained after Archer was placed in the patrol car. The officers re-entered Archer's home to take photographs, video, and gather additional evidence. As with the canine remains, the trial court found that the exigency was over once Bines determined that the dog was deceased and placed Archer under arrest. The trial court reasoned that at that time, the police officers had no justification to re-enter or search the residence or yard without a warrant. Contrary to the trial court's conclusion, even if the exigency was over when the officers re-entered the house, no warrant was required where the evidence ultimately seized was first observed and discovered in plain view.
In Anderson, this Court concluded that once the exigency that justified the warrantless search was over, law enforcement could not conduct any further search of the apartment or its content. 665 So.2d at 281. However, this Court noted that the officer was entitled to examine what was in plain view while on the premises. Similarly, in Davis, this Court reversed a trial court's denial of a motion to suppress and held that once the exigency ended, there was no further excuse for the police to be in the residence and seize the items they did not have probable cause to believe were involved with criminal activity. 834 So.2d at 328.
Unlike in Anderson and Davis, here, the evidence seized by the officers was already in plain view when the exigency was occurring. The exigency began once the officers arrived on scene and continued until the moment the responding officer realized the dog was dead. Up until that moment, the officer had observed holes in the wall which Archer admitted to throwing his dog against, debris on the floor which Archer admitted was the reason for punishing his dog in the first place, and the body of the dog itself. The officers' re-entry into Archer's house was a continuation of police presence for the limited purpose of photographing the incriminating evidence already found in plain view while the exigency was still ongoing, and seizing the deceased animal. The officers did not search an area other than where the incriminating evidence was in plain view during the exigent circumstances. Therefore, the canine remains, photographs, and bodycam footage are admissible under the plain view doctrine.
AFFIRMED IN PART; REVERSED IN PART
EVANDER and EDWARDS, JJ., concur.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Although the United States Supreme Court has described the exception to the warrant requirement in terms of protecting people, other courts have held that the exception reasonably extends to the protection of animals under certain circumstances. See, e.g., Suss v. Am. Soc'y for Prevention of Cruelty to Animals, 823 F.Supp. 181, 187 (S.D.N.Y. 1993) ("Real immediacy may allow emergency entries to preserve animal life that is threatened because of cruelty."); People v. Williams, 222 Cal.Rptr.3d 806, 816-18 (Cal. Ct. App. 2017) (explaining that conduct of animal control officers in looking into windows of defendants' attached garage and walking into and inspecting fenced backyard was justified by exigent circumstances where officers heard puppies barking, a dog whining, and there were strong odors of excessive fecal matter and thus, it was reasonable for officers to be concerned that dog was in distress and possibly in need of immediate aid under the circumstances); Tuck v. United States, 477 A.2d 1115, 1120-21 (D.C. 1984) (upholding warrantless search and seizure based on exigency even though exigency involved protection of animal life rather than human life); Morgan v. State, 289 Ga.App. 209, 656 S.E.2d 857, 860 (2008) (holding that an exigency exception to the warrant requirement exists "where a police officer reasonably believes that an animal on the property is in need of immediate aid due to injury or mistreatment"); People v. Thornton, 286 Ill.App.3d 624, 222 Ill.Dec. 60, 676 N.E.2d 1024, 1028-29 (1997) (finding "the totality of the circumstances known to the officers at the time of their entry into defendant's apartment was sufficient for the officers to reasonably believe that an emergency was at hand to rescue dog"); Davis v. State, 907 N.E.2d 1043, 1050 (Ind. Ct. App. 2009) ("[C]ircumstances of animal cruelty may create exigent circumstances to permit a warrantless search of the curtilage."); State v. Stone, 321 Mont. 489, 92 P.3d 1178, 1184 (2004) (holding that "prevention of needless suffering and death of animals on defendant's property created exigent circumstances justifying warrantless search"); State v. Dicke, 258 Or.App. 678, 679, 310 P.3d 1170 (2013) (finding a warrantless seizure of defendant's horse was justified under Fourth Amendment to render aid or assistance to horse) (citing Brinkley, 769 So.2d at 472 ); State v. Bauer, 127 Wis.2d 401, 379 N.W.2d 895, 899 (Wis. Ct. App. 1985) ("Exigent standard test applies to situations involving mistreatment of animals.");Pine v. State, 889 S.W.2d 625, 631 (Tex. App. 1994) (applying the emergency doctrine to an emergency involving saving the life of an animal).