936 So.2d 1218 (2006)
Christopher M. VANSLYKE, Sr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2380.
District Court of Appeal of Florida, Second District.
September 13, 2006.
*1219 James Marion Moorman, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
*1220 CANADY, Judge.
Christopher M. Vanslyke, Sr., appeals his judgment and sentence for possession of cannabis with intent to sell or deliver.[1] Vanslyke entered a no contest plea, reserving the right to appeal based on the trial court's denial of a dispositive motion to suppress cannabis seized by police during a warrantless search of Vanslyke's dwelling. The search was based on a report of child abuse. Vanslyke contends the denial of the suppression motion was erroneous because (1) a child abuse report did not give police probable cause and did not establish that exigent circumstances existed so as to permit police to conduct a warrantless entry and search of Vanslyke's residence; and (2) even if the entry was legal, the police exceeded the scope of the purpose of the search. We conclude that the warrantless search was unlawful because the State failed to prove that there was an emergency which necessitated the warrantless entry.

I. Background

At the hearing on the motion to suppress, Jamie Schoolnik, a Department of Children and Families (DCF) investigator, testified that she received a report concerning children residing with Vanslyke that had been phoned in to the department's central abuse hotline.[2] The report "alleg[ed] substances exposed and conditions hazardous to the children." The report "was not concerning injury to the children." After the call was received by the hotline, a follow-up call was made to the person who phoned in the report. According to Schoolnik's testimony, the report of abuse was classified as a "24 hour report," requiring investigation within twenty-four hours of receipt of the report of abuse, rather than an "immediate" report, which would require investigation within three hours of the abuse report.[3]
Schoolnik and Tampa police officer Mark McGowan went to Vanslyke's residence to investigate the allegations. When Vanslyke opened the door, Schoolnik and Officer McGowan identified themselves. Vanslyke told Schoolnik and Officer McGowan that no children were inside the residence and that he [Vanslyke] did not live at the residence. Vanslyke then shut the door. Believing that Vanslyke was lying, Schoolnik and McGowan called for backup and waited outside.
Tampa police sergeant William Rousseau testified he responded to the scene after Schoolnik advised him about a report involving "drugs and guns, I believe, in the house with children." A few minutes after Sergeant Rousseau arrived, Vanslyke and another man walked out of the residence. Officer McGowan and Sergeant Rousseau immediately detained the men to determine whether Vanslyke lived at the residence and if he knew anything about the children. While handcuffing Vanslyke, McGowan smelled marijuana on Vanslyke's clothing and hair. Officer McGowan and Sergeant Rousseau then accompanied the men back into the residence and proceeded to search for the children.
During the search, Schoolnik, Officer McGowan, and Sergeant Rousseau noticed children's clothing and toys in two bedrooms, although they never located any children. Officer McGowan looked inside *1221 a bedroom closet and noticed a child's backpack. Officer McGowan testified he then looked inside the backpack to determine if it contained any information that would reveal the whereabouts of the children. Officer McGowan discovered marijuana in the backpack.[4]
The trial court denied the motion to suppress the marijuana found in the backpack. The trial court determined that Schoolnik had reason to believe the children were in danger and had reason to go through the home to investigate the children's welfare. Regarding the search of the backpack, the trial court stated:
I think its reasonable to look at a child'sinside a child's backpack because that corresponds with something that wasthat a child uses to take things back and forth to school, whatever, that could have its name in it so that an officer, and more so the DCF investigator, could tell whether or not the child lived there so they can conclude their investigation properly.

II. Argument on Appeal

For his first point on appeal, Vanslyke argues that the warrantless entry and search of his home were illegal because the police lacked probable cause and because there were no exigent circumstances. He contends the police were acting on an anonymous tip that did not include specific allegations of child abuse and for which there was no indicia of reliability. Vanslyke also contends that even if the police had probable cause, the tip failed to establish that exigent circumstances existed so as to permit the police to enter the house without a warrant.
The State responds that based on the totality of the circumstances, the police were justified in entering and searching the home under the basis of the "emergency exception" to the warrant requirement, which permits the police to enter and investigate a person's home in order to preserve life or render first aid.
For his second point on appeal, Vanslyke contends that even if the police lawfully entered the house based on probable cause and exigent circumstances, they exceeded the scope of the purpose of the search by looking in areas where a child could not be found, such as in a backpack. Vanslyke argues that once the children were not located within the house, the police lacked authority to continue the search.
On this point, the State contends that the exigent circumstances which justified the initial entry also justified the search of the backpack because Officer McGowan believed it might contain information about the children's whereabouts.

III. Analysis

In Brigham City v. Stuart, ___ U.S. ___, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), the Supreme Court set forth the principles of Fourth Amendment law that are the starting point for our analysis:
It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.... [W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search *1222 is objectively reasonable under the Fourth Amendment.
One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.
Id. at 1947 (citations and some internal quotation marks omitted) (alteration in original).
Whether a warrantless search is justified by such an emergency does not turn on the "subjective motivation" of the police. Id. at 1948. "An action is `reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action." Id. (some internal quotation marks omitted) (alteration in original). Accordingly, "[the] police may enter a residence without a warrant if an objectively reasonable basis exists for the [police] to believe that there is an immediate need for police assistance for the protection of life." Seibert v. State, 923 So.2d 460, 468 (Fla.2006). "In other words, where safety is threatened and time is of the essence, . . . `the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry.'" Riggs v. State, 918 So.2d 274, 279 (Fla.2005) (quoting Arango v. State, 411 So.2d 172, 174 (Fla.1982)). "[A] key ingredient of the exigency requirement is that the police lack time to secure a search warrant." Rolling v. State, 695 So.2d 278, 293 (Fla.1997). In addition, "an entry based on an exigency must be limited in scope to its purpose. Thus, an officer may not continue her search once she has determined that no exigency exists." Id. "[T]he burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).
A phone call reporting child abuse may, of course, provide the basis for conducting a warrantless entry to render emergency assistance to an injured child or to protect a child from imminent injury. But for a report to justify a warrantless entry, the reportconsidered in the context of the totality of relevant circumstancesmust provide "an objectively reasonable basis" for the police "to believe that there is an immediate need for police assistance," Seibert, 923 So.2d at 468, to "render emergency assistance" to an injured child or to protect a child from a threat of "imminent injury," Brigham City, 126 S.Ct. at 1947.
In State v. Boggess, 115 Wis.2d 443, 340 N.W.2d 516 (1983), the Supreme Court of Wisconsin considered the sufficiency of an anonymous report of abuse to justify a warrantless entry of the house where the allegedly abused children resided. The anonymous caller reported that two named children who were living with the defendant "may have been battered and were in need of medical attention." Id. at 519. "The caller also indicated that one of the children . . . was limping, and that because of bruises the caller witnessed on [that child], [the child] may have further damage done to his body and should be checked by a doctor." Id. Finally, the caller "stated that he knew the [defendant's family] fairly well and that [the defendant] had a bad temper." Id. On the basis of this information, the police went to *1223 the defendant's residence. When the police explained their purpose, the defendant asked if they had a warrant. The police responded that no warrant was necessary and entered the defendant's house. Upon examining the children, evidence of child abuse was readily observed.
The Boggess court analyzed the sufficiency of the anonymous phone call to establish the existence of an exigent circumstance as a basis for the warrantless search under the principles employed in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Gates held there was probable cause for issuance of a search warrant based on an anonymous letter indicating that the defendants were involved in committing drug offenses and predicting activities of the defendants, where the letter's predictions were substantially corroborated by the police.
Utilizing the Gates analysis, the Boggess court concluded that the detailed information provided by the anonymous informant provided a reasonable basis for the warrantless search.
The caller did not simply make a generalized statement that the children had been abused but specifically indicated that [one of the children] had bruises and was limping. The caller also indicated that he knew the [defendant's family] fairly well, and that [the defendant] had a bad temper. The detail provided indicates that the caller was speaking from personal knowledge and not merely repeating an idle rumor. The caller's statements ... also reflect[ ] his basis of knowledge, and indicate[ ] that he in all likelihood obtained his information from personal observation, not from gossip or rumor.
340 N.W.2d at 524. Based on these circumstances, the court in Boggess held that "a reasonable person would have believed that the children within the [defendant's] residence were in immediate need of aid or assistance due to actual or threatened physical injury, and that there was an immediate need for entry into the home to provide that aid." Id. at 522.[5]
In the instant caseunlike Boggessthe record is devoid of any details that would provide support for the conclusion that the report of abuse was reliable. Even though the identity of the person making the report was known to DCF,[6] there is no showing concerning the basis for the informant's knowledge of the supposedly threatening circumstances. There is nothing in the record to show that the information provided by the citizen informant was based on the informant's personal knowledge. Although information provided by a "`citizen-informant'" is ordinarily considered to be "at the high end of the tip-reliability scale," State v. Maynard, 783 So.2d 226, 230 (Fla.2001), a particular "informant's `veracity' or `reliability' and his `basis of knowledge'" must always be "understood as relevant considerations in the totality-of-the-circumstances analysis" that guides the determination of the reasonableness of reliance by the police on the information provided by the informant, Gates, 462 U.S. at 233, 103 S.Ct. 2317. Here, the record shows no basis in the abuse report itself or in the surrounding circumstances for crediting the report of abuse.
*1224 Moreover, the report provided no basis for concluding either that the children had suffered any injury or that they were at risk of imminent injury. The vague statements concerning "substances exposed," "conditions hazardous," and "drugs and guns" are insufficient to establish that it was necessary for the police to enter Vanslyke's house "to protect an occupant from imminent injury." Brigham City, 126 S.Ct. at 1947. Even a reliable report that children were living in a house where drugs and guns were present would not show the existence of an exigency justifying a warrantless search without an additional showing of a specific threat of imminent harm to the children in the house. Similarly, the fact that the officer detaining and handcuffing Vanslyke outside Vanslyke's house smelled marijuana on him does not demonstrate a specific threat of harm to children in the house.
Finally, although the test we apply is one of objective reasonableness, the fact that DCF itself classified the report of abuse as one which did not require "immediate" investigation is consistent with the conclusion that there was not an "immediate need for police assistance," Seibert, 923 So.2d at 468, and that the police did not "lack time to secure a search warrant," Rolling, 695 So.2d at 293.[7]

IV. Conclusion

The search of Vanslyke's dwelling without a warrant was conducted in violation of the Fourth Amendment. The trial court therefore erred in denying the dispositive motion to suppress the marijuana. Vanslyke's conviction is reversed, and the case is remanded with instructions that Vanslyke be discharged on the cannabis charge.
Reversed and remanded.
NORTHCUTT and STRINGER, JJ., Concur.
NOTES
[1] Vanslyke was also charged with possession of methamphetamine and obstructing an officer without violence. The methamphetamine charge was dismissed. The obstructing an officer chargeto which Vanslyke also entered a no contest pleais not at issue in this appeal.
[2] See § 39.201(2)(a), Fla. Stat. (2003).
[3] See § 39.201(5).
[4] The officer also found methamphetamine and marijuana in a cigar box. The trial court granted the motion to suppress with respect to the contents of the cigar box.
[5] For other circumstances in which a report of child abuse was held to justify a warrantless search, see State v. Jones, 188 Ariz. 388, 937 P.2d 310, 317-18 (1997); State v. Plant, 236 Neb. 317, 461 N.W.2d 253, 260-63 (1990).
[6] The name of a person reporting child abuse is, of course, subject to certain confidentiality requirements. See § 39.202(5).
[7] For various circumstances in which a report of child abuse was considered insufficient to justify a warrantless search, see Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1095 (3d Cir.1989); Walsh v. Erie County Dep't of Job & Family Servs., 240 F.Supp.2d 731, 749 (N.D.Ohio 2003); Lopkoff v. Slater, 898 F.Supp. 767, 775 (D.Colo.1995), aff'd, 103 F.3d 144 (10th Cir. 1996); Chavez v. Bd. of County Comm'rs, 130 N.M. 753, 31 P.3d 1027, 1031, 1037 (2001).