NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                  )
                                   )
          Appellant,               )
                                   )
v.                                 )          Case No. 2D17-4149
                                   )
M.B.W.,                            )
                                   )
          Appellee.                )
_____    )

Opinion filed July 31, 2019.

Appeal from the Circuit Court for Pinellas
County; Kathleen T. Hessinger, Acting
Circuit Judge.

Ashley Moody, Attorney General,
Tallahassee, and Elba Caridad Martin,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender, and
Daniel Muller, Assistant Public Defender,
Bartow, for Appellee.


LaROSE, Judge.

          The State appeals an order granting M.B.W.'s motion to suppress "[a]ny

evidence incident to the search of [a] hotel room."  We have jurisdiction.  See Fla. R.

App. P. 9.140(c)(1)(B).  The State failed to justify law enforcement officers' warrantless

entry into M.B.W.'s hotel room.  See Welsh v. Wisconsin, 466 U.S. 740, 750 (1984)

("[T]he burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries."); Byrd v. State, 16 So. 3d 1026, 1028 (Fla. 2d DCA 2009) ("The State bears the burden of rebutting the presumption that such warrantless entries are unreasonable."); Cooper v. State, 706 So. 2d 369, 370 (Fla. 2d DCA 1998) (observing that "[t]he State . . . bore the burden to prove the lawfulness of the detective's warrantless entry into the room"); Mestral v. State, 16 So. 3d 1015, 1017 (Fla. 3d DCA 2009) ("Where, as here, the State relies on exigent circumstances, '[t]he burden rests on the State to show the existence of such an exceptional situation.' " (quoting Vale v. Louisiana, 399 U.S. 30, 34 (1970)); see, e.g., State v. Fultz, 189 So. 3d 155, 158 (Fla. 2d DCA 2016) ("Exigent circumstances are one such exception that may justify a warrantless search, but the police must have an objectively reasonable basis to support their actions." (citing Vanslyke v. State, 936 So. 2d 1218, 1221-22 (Fla. 2d DCA 2006))); Diaz v. State, 34 So. 3d 797, 802 (Fla. 4th DCA 2010) ("The officers must have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence.").  Thus, we affirm.

## Background

Law enforcement officers had an outstanding probable cause affidavit for M.B.W. stemming from a misdemeanor domestic battery.  Learning "that [M.B.W.] was at an Express Inn," officers went there and spoke to the manager.  Being told that M.B.W. was a minor, the manager asked the officers to remove him from the premises.  As it turns out, another occupant of the room, J.S., was also a minor and had rented the room using a false name.  Three officers and the manager went to the room; upon arriving, the manager knocked on the door.

- 2 -

M.B.W. answered the door and the officers recognized him immediately. Detective Dodson "reached in [the room] and grabbed [M.B.W.'s] arm to place him under arrest." The officers removed M.B.W. from the doorway and secured him in the hallway/breezeway. At that point, one of the officers saw another occupant dart toward the back of the room.[1] Ultimately, a third occupant was discovered hiding in the bathroom. After handcuffing M.B.W., the officers entered the hotel room with M.B.W. in tow. The officers observed, in plain view, a scale with cocaine resting on a nightstand. They also noticed a backpack resting behind the scale. After being read their Miranda[2] rights, the three occupants disclaimed ownership of the backpack. Believing the backpack to have been abandoned, the officers opened it and discovered Xanax, marijuana, and alprazolam inside.

Later, the officers obtained a hotel surveillance video. The video showed M.B.W. "waiting outside – just outside the front door as J.S. was checking into the hotel." The video depicts M.B.W. wearing a backpack identical to that found in the hotel room.

---

[1]On this point, Officer Nardozzi testified as follows:

> During that part, I observed what looked like someone kind of run into the back, so, for that reason, you know, and the fact we were effecting arrest for what we were arresting for, we ended up making -- you know, making entry just to, basically, do like a kind of a protective sweep kind of thing . . . . Basically to see why someone ran to the back, for officer safety reasons.

Detective Dodson also testified that "[w]hile I was taking [M.B.W.] into custody, another individual in the room ran towards the back . . . where the bathroom was."

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

In granting M.B.W.'s suppression motion, the trial court reasoned that once M.B.W. was arrested in the doorway, "no further action was necessary by the police." Therefore, they "had no lawful authority to enter the hotel room and no lawful authority to search the backpack." The trial court also found that it was the hotel manager's obligation, not that of the officers, to remove the minors from the premises. The trial court found no exigent circumstances justifying entry into the room because "[t]he officers gave no testimony as to why the movement of the other male occupant in the room caused any type of alarm for their safety." To support this point, the trial court observed that the officers dragged M.B.W. back into the room with them.

On appeal, the State raises two main arguments. First, the State argues that M.B.W. lacked standing to challenge the officers' entry into the room because "the person [who] did rent the room did so illegally as she was a minor and used a false name." Second, the State contends that officers had a right to enter the hotel room without a warrant because: (a) the exigent circumstances exception to the warrant requirement justified a protective sweep;[3] and, (b) they were lawfully assisting the hotel manager to evict the minors from the premises.

## Analysis

"[I]n reviewing a trial court's ruling on a motion to suppress, this court must give deference to the trial court's factual findings if those findings are supported by competent, substantial evidence, but this court must review the trial court's ruling of law de novo." State v. Roman, 103 So. 3d 922, 924 (Fla. 2d DCA 2012).

---

[3]In their briefs, the parties seemingly conflate the exigent circumstances exception with the search-incident-to-lawful-arrest exception. We will address each of these separate, legally-distinct concepts below.

- 4 -

**I.        Standing**

The State claims that "M.B.W. had no expectation of privacy in the hotel room.  First, he did not rent the room.  Second, the person that did rent the room did so illegally as she was a minor and used a false name."  We cannot agree.  See Kyllo v. United States, 533 U.S. 27, 33 (2001) ("[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."); State v. Markus, 211 So. 3d 894, 902 (Fla. 2017) ("A person has standing to claim Fourth Amendment protection if that person has a reasonable expectation of privacy in the invaded place." (citing Minnesota v. Olson, 495 U.S. 91, 95 (1990))).

The State raised standing in the trial court after the parties' presentation of evidence.  As such, we are dubious of the State's complaint, made for the first time on appeal, that M.B.W. "failed to introduce any evidence or argue any legal authority [to the trial court] establishing a reasonable expectation of privacy."  See State v. Pettis, 266 So. 3d 238, 239 (Fla. 2d DCA 2019) ("Although standing was not raised below, the State correctly observes that it may raise lack of standing for the first time on appeal."); State v. Setzler, 667 So. 2d 343, 345 (Fla. 1st DCA 1995) ("The defense has the burden to prove standing, where standing is at issue.") (emphasis added).

Nevertheless, any failure to present evidence on this issue would not compel reversal; ordinarily, we would remand for the trial court to receive evidence about M.B.W.'s standing.  See, e.g., Murphy v. State, 32 So. 3d 122, 125 (Fla. 2d DCA 2009) ("While the issue can be addressed by this court, Murphy was never given an opportunity to meet his burden of proof on this issue.  Accordingly, Murphy is entitled to an evidentiary hearing on the matter." (citation omitted)); McCauley v. State, 842 So. 2d

- 5 -

897, 900 (Fla. 2d DCA 2002) ("Because McCauley was not given an opportunity to prove his interest in the premises below due to the State's tacit concession of standing, we conclude that he is entitled to a hearing on the matter."). We need not do that here. On our record, we can dispose of the State's standing argument. See Hendley v. State, 58 So. 3d 296, 299 (Fla. 2d DCA 2011) (declining to reverse and remand trial court's denial of motion to suppress on issue of standing raised for the first time on appeal because "a remand for that purpose would be a futile exercise in this case").

### a. Identity of payor not dispositive of standing

The State contends that M.B.W. lacked standing because he did not rent the room. The State misses the mark. The touchstone of any Fourth Amendment analysis is whether the defendant had a reasonable expectation of privacy in the place searched. See Rakas v. Illinois, 439 U.S. 128, 143 (1978); see also Williams v. State, 982 So. 2d 1190, 1194 (Fla. 4th DCA 2008) ("A citizen's right to privacy under the Fourth Amendment of the Constitution of the United States is determined by a two prong test: 1) whether the citizen had a subjective expectation of privacy; and 2) whether that expectation was one that society recognizes as reasonable." (citing State v. Smith, 641 So. 2d 849, 851 (Fla. 1994))). Generally, hotel guests have a reasonable expectation of privacy in their lodgings. See Stoner v. California, 376 U.S. 483, 489-90 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); Cooper, 706 So. 2d at 370 ("The occupants of a motel room enjoy the protection of the Fourth Amendment."); Gnann v. State, 662 So. 2d 406, 407 (Fla. 2d DCA 1995) ("The constitutional rights and privileges that apply to occupants of private permanent dwellings also apply to motel guests."); State v. McRae, 194 So. 3d 524, 528 (Fla. 1st DCA 2016) ("A private home (including a

motel room) 'is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment.' " (quoting Gonzalez v. State, 578 So. 2d 729, 734 (Fla. 3d DCA 1991))); Green v. State, 824 So. 2d 311, 314 (Fla. 4th DCA 2002) ("As homes to the peripatetic, hotel and motel rooms are legally imbued 'with the sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection.' " (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976))); State v. Wesley, 749 So. 2d 592, 593 (Fla. 5th DCA 2000) ("Certainly occupants of a motel room enjoy the protection of the [F]ourth [A]mendment."); see, e.g., Holloman v. State, 959 So. 2d 403, 406 (Fla. 2d DCA 2007) ("Mr. Holloman provided sufficient evidence of an expectation of privacy in the motel room to render the entry and search presumptively unreasonable unless the State proved an exception to the warrant requirement.").

The State offers no case demonstrating that standing hinges on who paid for the room.  Cf. Gilbert v. State, 789 So. 2d 426, 428 n.1 (Fla. 4th DCA 2001) ("We are deciding this case as though appellant rented the room.  However, we recognize that appellant testified that his neighbor rented the room, and he was simply using it with his girlfriend.  Because the state has not raised the issue of whether appellant has a reasonable expectation of privacy where he is only a guest and not the paying occupant, we do not address the potential standing issue in this case.").

Although J.S. can be seen on the surveillance video checking into the hotel, there was no evidence that she had yet paid for the room prior to the search or that the bill had become due.  Further, simply because J.S. was the occupant who checked into the hotel did not foreclose the possibility that M.B.W. had not already or would not have later provided the money for all or a portion of the rental charge.  See

- 7 -

Holloman, 959 So. 2d at 406 ("The constitutional rights and privileges that apply to those who occupy private permanent dwellings also apply to those who occupy a motel room when the 'occupant is there legally, has paid or arranged to pay, and has not been asked to leave.' " (emphasis added) (quoting Turner v. State, 645 So. 2d 444, 447 (Fla. 1994))). Most telling, the unrebutted testimony of Sergeant Levey noted that M.B.W. "was staying [at the Express Inn]."

The surveillance video also shows that M.B.W. accompanied J.S. to reserve the room, and waited just outside the hotel's main office as she checked in. Also, the two appeared to communicate with each other while reserving the room, suggesting that M.B.W. may have participated in the room's reservation. The fact that M.B.W. accompanied J.S. to the hotel's main office suggests that he began his occupancy of the room at the very same time she did. Moreover, upon being informed that M.B.W. was a juvenile, the hotel manager asked the officers to remove him, suggesting that management viewed him as a guest, not as a casual, short-term visitor. Compare Minnesota v. Carter, 525 U.S. 83, 90-91 (1998) (holding that persons present in the home of a casual acquaintance for a few hours for business purposes lack standing because they do not have a reasonable expectation of privacy), with Olson, 495 U.S. at 96-97, 99 ("We need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable. . . . From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside.").

- 8 -

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness; we must interpret the evidence and draw reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling." State v. Jones, 203 So. 3d 972, 972 (Fla. 2d DCA 2016). With this caveat in mind, we conclude that M.B.W. had a reasonable expectation of privacy in the hotel room sufficient to confer standing, irrespective of who paid the bill. See State v. Brown, 575 So. 2d 763, 764 (Fla. 4th DCA 1991) ("In order to determine whether a defendant has a reasonable expectation of privacy in the premises searched, courts must consider the totality of the circumstances in the particular case.").

### b. Hotel check-in and standing

The State argues with no elaboration that "the person that did rent the room did so illegally as she was a minor and used a false name." We question whether the State has waived review of this point. See Victorino v. State, 23 So. 3d 87, 103 (Fla. 2009) ("Victorino's failure to fully brief and argue these points constitutes a waiver of these claims."); Duest v. Dugger, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). In any event, the argument lacks merit.

The State cites no case supporting its suggestion. Cf. U.S. v. Caymen, 404 F.3d 1196, 1200 (9th Cir. 2005) ("The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that 'society is prepared to accept as reasonable.' " (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979))). Nor does the State point us to any

- 9 -

Florida statute making it a crime to either obtain lodging as a minor or reside in lodging as an unaccompanied minor.  Florida's statutes, seemingly, do not mandate a minimum age for making hotel reservations.  Instead, Florida statutes prescribe the means for ejecting undesirable guests.  See § 509.141, Fla. Stat. (2016).  A person can only be guilty of a crime under this statute if he remains after management asked him to leave.  See § 509.141(3).  In M.B.W.'s case, the manager had not yet asked M.B.W., or any of the room's other occupants, to leave before law enforcement entered the room.

To support its point, the State relies upon Green v. State, 824 So. 2d 311, 314-15 (Fla. 1st DCA 2002), which addressed whether a motion to suppress was properly denied where Mr. Green's Fourth Amendment rights had expired concurrently when his right to occupy the room ended due to nonpayment.  The initial search in that case was conducted by the hotel manager who was not a government agent subject to the Fourth Amendment.  Id. at 315.  More importantly, Mr. Green had already been ejected before the police conducted their search.  Id. at 313; see also §§ 509.141(2) ("The operator of any public lodging establishment or public food service establishment shall notify such guest that the establishment no longer desires to entertain the guest and shall request that such guest immediately depart from the establishment."), .141(3) ("Any guest who remains or attempts to remain in any such establishment after being requested to leave is guilty of a misdemeanor of the second degree . . ."), .141(4) ("If any person is illegally on the premises of any public lodging establishment or public food service establishment, the operator of such establishment may call upon any law enforcement officer of this state for assistance.  It is the duty of such law enforcement officer, upon the request of such operator, to place under arrest and take into custody for violation of this section any guest who violates subsection (3) in the presence of the

officer."). The Express Inn manager enlisted law enforcement officers in the first instance to remove M.B.W. and the other occupants, without first notifying the occupants that they must leave. Cf. McGibiany v. State, 399 So. 2d 125, 126 (Fla. 2d DCA 1981) ("[A] motel manager has no power by consent or invitation to waive a guest's Fourth Amendment rights of privacy against unreasonable warrantless searches. Because a law enforcement officer accompanied the manager and participated in the search, all constitutional restrictions on warrantless searches apply.").

Similarly, no Florida statute, to our knowledge, criminalizes the use of an alias to book a hotel room. In fact, the contrary seems to be the rule. See United States v. Newbern, 731 F.2d 744, 748 (11th Cir. 1984) ("Although the room was registered under an alias, appellants had complete control over the room. No other persons were in possession of keys to the room. Appellants' use of the motel room strictly for lodging provides the same expectation of privacy as would their home."); Moberg v. State, 810 S.W. 2d 190, 194 (Tex. Crim. App. 1991) (en banc) ("Notwithstanding the appellant in this particular case registered under an alias, we fail to perceive how that standing alone diminished appellant's expectation of privacy in the room he had let."); cf. United States v. Pitts, 322 F.3d 449, 457-59 (7th Cir. 2003) ("There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable.").

II.      **Warrantless Searches**

"A warrantless search of a home is 'per se unreasonable under the Fourth Amendment . . . and Article I, section 12, of the Florida Constitution, subject to a few specifically established and well-delineated exceptions.' " Daniels v. State, 208 So. 3d

1223, 1226 (Fla. 2d DCA 2017) (quoting Fultz, 189 So. 3d at 158); see also Gnann, 662 So. 2d at 408 ("Searches conducted without a warrant are per se unreasonable unless conducted within the framework of a few specifically established and well delineated exceptions." (citing Katz v. United States, 389 U.S. 347 (1967))).

Because the officers could not see the contraband from outside of the hotel room, we must decide whether their warrantless entry was excused. Cf. State v. Rickard, 420 So. 2d 303, 305 (Fla. 1982) (identifying as a "prior valid intrusion" a scenario where "an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. It is this situation for which the United States Supreme Court created the 'plain view doctrine' in Coolidge[ v. New Hampshire, 403 U.S. 443 (1971)] and held that an officer could constitutionally seize the contraband in 'plain view' from within this protected area.").

The presumption of unreasonableness may be overcome if the State sufficiently demonstrates the applicability of any one of the warrant requirement exceptions. "The five exceptions are for searches (1) with the occupant's consent, (2) incident to lawful arrest, (3) with probable cause to search but with exigent circumstances, (4) in hot pursuit, or (5) pursuant to a stop and frisk." Lee v. State, 856 So. 2d 1133, 1136 (Fla. 1st DCA 2003) (citing Gnann, 662 So. 2d at 407). The relevant exceptions for us are exigent circumstances and search incident to arrest.

a.      **Exigent circumstances**

To rely on exigent circumstances, "the State must 'demonstrate a grave emergency that 'makes a warrantless search imperative to the safety of the police and of the community.' " State v. Archer, 259 So. 3d 999, 1002 (Fla. 5th DCA 2018)

- 12 -

(quoting Riggs v. State, 918 So. 2d 274, 278 (Fla. 2005))).  We recently discussed the

contours of the exigent circumstances exception:

> The exigent circumstances exception is not a shortcut by which police may circumvent the requirement of a search warrant. These exceptions are based on a police officer's ability to articulate objective facts which make the procuring of a warrant impractical. See Davis v. State, 834 So. 2d 322, 327 (Fla. 5th DCA 2003) ("The sine qua non of the exigent circumstances exception is 'a compelling need for official action and no time to secure a warrant.' " (quoting Michigan v. Tyler, 436 U.S. 499, 509, (1978))). "[I]f time to get a warrant exists, the enforcement agency must use that time to obtain the warrant." Herring v. State, 168 So. 3d 240, 244 (Fla. 1st DCA 2015), review dismissed, 173 So. 3d 966 (Fla. 2015) (alteration in original) (quoting Hornblower v. State, 351 So. 2d 716, 718 (Fla. 1977)).

Fultz, 189 So. 3d at 158.  "The state bears the burden to demonstrate that 'procurement

of a warrant was not feasible because the exigencies of the situation made that course

imperative.' " Diaz, 34 So. 3d at 802 (quoting Hornblower v. State, 351 So. 2d 716, 718

(Fla. 1977)).

There is no exhaustive, all-encompassing list of factors that qualify a

situation as "exigent circumstances."  See Lee, 856 So. 2d at 1136 ("There is no

exhaustive list of what constitutes exigent circumstances to permit a warrantless entry

of a constitutionally protected space.").  However, "[t]he kinds of exigencies or

emergencies that may support a warrantless entry include those related to the safety of

persons or property, as well as the safety of police."  Riggs, 918 So. 2d at 279; see also

Seibert v. State, 923 So. 2d 460, 469 (Fla. 2006) ("The most urgent emergency situation

excusing police compliance with the warrant requirement is, of course, the need to

protect or preserve life." (quoting United States v. Holloway, 290 F.3d 1331, 1335 (11th

Cir. 2002))); Aguilar v. State, 259 So. 3d 262, 269 (Fla. 2d DCA 2018) ("The exigent-

circumstances exception encompasses an 'emergency situation which requires the

police to assist or render aid.'  Entering a home to investigate a suspected burglary or to check on the safety of its residents, for example, can constitute exigent circumstances sufficient to permit a warrantless search." (quoting Seibert, 923 So. 2d at 468)); Markus v. State, 160 So. 3d 488, 492 (Fla. 1st DCA 2015) (stating that in order "[t]o rebut the presumed illegality of warrantless entry by police officers, the exigent circumstance must involve a threat to the safety of the public, property, or police which required immediate action by officers with no time to obtain a warrant"); Durham v. State, 174 So. 3d 1074, 1075-76 (Fla. 5th DCA 2015) ("To justify an emergency entry into a home by police officers, the State must demonstrate that 'an objectively reasonable basis exist[ed] for the officer to believe that there is an immediate need for police assistance for the protection of life . . . ." (quoting Seibert, 923 So. 2d at 468)).

The Florida Supreme Court has enumerated a catalogue of cases where law enforcement officers relied on the exigent circumstances exception:

> [W]e determined that exigent circumstances existed when an officer entered the defendant's home after he received a report that the defendant had not shown up for military duty and when the officer went to investigate, he found a broken window at the defendant's residence.  Zakrzewski v. State, 866 So. 2d 688, 695 (Fla. 2003) (the officer testified that he "feared for the welfare of whomever may have been in the house at that time, thinking that there may have been a burglary, the family may have been on vacation, or something like that").  Exigent circumstances have been determined to exist when 911 calls were received, even in cases when the callers did not identify a life-threatening emergency, when the officers arrived at the source of the 911 call to find suspicious circumstances at the residence. See Campbell v. State, 477 So. 2d 1068, 1070 (Fla. 2d DCA 1985) (after defendant's 911 call that she had overdosed on cocaine, police were permitted to enter even though she only requested paramedics and told the police to leave); State v. Barmeier, 878 So. 2d 411, 413 (Fla. 3d DCA) (entry was permitted after 911 call from defendant about problems with his tenant, when responding officers found front door open and received no response when they called out to the

- 14 -

residents, because the officers were concerned the people inside the residence might have been injured), review denied, 891 So. 2d 549 (Fla. 2004); In re J.B., 621 So. 2d 489, 490 (Fla. 4th DCA 1993) (entry permitted after 911 call received from address though caller hung up; defendant, a juvenile, told officer to leave and that everything was okay, but officer observed place in disarray and so was concerned for defendant). It has also been determined that an emergency situation did not exist, however, when officers, after responding to a be-on-the-look-out (BOLO) call, entered an apartment because the officers observed that one of the individuals inside had a metal object in his hand, which the officers thought might be a weapon. See Alvarez v. State, 573 So. 2d 400, 401 (Fla. 3d DCA 1991) (court reasoned that the BOLO did not mention a weapon and that suspect was cooperative with officers, so they had no reason to think that anyone was in danger); see also Hornblower, 351 So. 2d at 718 (search not permitted because sounds of "scurrying" in residence that officers heard when they knocked did not create sufficient exigent circumstances to justify entry); Lee v. State, 856 So. 2d 1133, 1137 (Fla. 1st DCA 2003) (officers' mere speculation that sting operation would get out of control and put lives of officers in danger was not sufficient exigent circumstance to justify entry).

Seibert, 923 So. 2d at 470.

"An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' " Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (alteration in original) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)). The measure of reasonableness is totality of the circumstances. See Wright v. State, 1 So. 3d 409, 412 (Fla. 2d DCA 2009); see also State v. Boyd, 615 So. 2d 786, 789 (Fla. 2d DCA 1993) ("[T]o allow a warrantless entry into a person's home in an emergency situation, there must be objectively reasonable circumstances that convey to the police officer an articulable, reasonable belief that an emergency exists.").

- 15 -

Against this objective metric, the State's exigent circumstances argument fails.[4] By their own testimony, the law enforcement officers went to the Express Inn to "tak[e M.B.W.] into custody for the outstanding battery probable cause." They removed him from the hotel room and placed him in handcuffs. During this process, one of the officers observed another occupant run to the back of the room. We must determine whether the officers had an objectively reasonable basis to believe that exigent circumstances justified their warrantless entry into the room. We think not.

The purpose for which the officers went to the Express Inn was accomplished when they observed another occupant's movement. M.B.W. was in custody and posed no threat or harm to the officers. Yet, the officers suggested that their entry into the room was for officer safety. But, as the trial court observed, the witnesses offered no testimony as to why the movement of one occupant caused the officers any safety concern or suggested criminal activity. Furthermore, the trial court correctly reasoned that any safety claim was undercut by the fact that the officers dragged M.B.W. back into the hotel room with them. It is not apparent to us why three officers would place M.B.W., a restrained juvenile, into a potentially hazardous situation from which he had been removed. Our record does not suggest that the officers possessed an objectively reasonable basis to believe that officer safety justified their warrantless entry into the hotel room.

---

[4]It is undoubtedly true that police are tasked with making difficult, time-sensitive decisions, often under harrowing, high-stakes, and pressurized circumstances. Thus, our post-hoc determination is neither a criticism nor an indictment of the law enforcement officers' actions in this case. However, our review of the facts with which we are presented, compels our conclusion that law enforcement's actions violated M.B.W.'s constitutional right to be free from unreasonable search and seizure.

### b.     Search incident to arrest; i.e., protective sweep

The second exception to the warrant requirement at play in this case is the officers' supposed search of the room incident to M.B.W.'s arrest.  A protective sweep is "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others."  Maryland v. Buie, 494 U.S. 325, 327 (1990).  "Officers may conduct a sweep regardless of whether or not the arrest occurred inside or outside the home."  Daniels, 208 So. 3d at 1227.  "However, a protective sweep may only be performed when officers 'have a <u>reasonable, articulable suspicion</u> that the protective sweep is necessary due to a safety threat or the destruction of evidence.' "  Id. (quoting Diaz, 34 So. 3d at 802); see also Rozzo v. State, 75 So. 3d 409, 413 (Fla. 4th DCA 2011) ("Where a defendant is arrested outside his or her home, a warrantless protective sweep of the defendant's home is permissible <u>only</u> if the officers have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence.").  Thus, "[t]he arresting officer must have both '(1) a reasonable belief that third persons are inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape or jeopardize the safety of the officers or the public.' "  Id. (quoting Diaz, 34 So. 3d at 802)).

We find the Fourth District's decision in Diaz helpful.  34 So. 3d at 797.  In Diaz, the court held a protective sweep to be unjustified where an officer testified that he made an arrest at the front door of a house and then conducted a sweep inside the house for officer safety because he could see some movement in the back bedroom and so could tell that there were other people inside.  34 So. 3d at 799, 802.  "Five officers entered the home with guns drawn and performed a protective sweep."  Id. at

- 17 -

799. An officer testified that the protective sweep was for officer well-being and to make sure nobody was armed. Id. at 799-800. The Fourth District concluded that "the police were not justified in entering the defendant's house without a warrant and conducting a protective sweep." Id. at 803-04. Our sister district noted that "no evidence was adduced at the hearing to establish the required 'reasonable, articulable suspicion' that these individuals posed a danger and might jeopardize the officers' safety or destroy evidence." Id. at 802.

Similarly, in this case, the State's witnesses failed to articulate why a protective sweep was "necessary due to a safety threat or the destruction of evidence." Daniels, 208 So. 3d at 1227 (quoting Diaz, 34 So. 3d at 802). As in Diaz, the movement in the back of the hotel room was, by itself, insufficient to justify a protective sweep. As noted above, the fact that the officers dragged a handcuffed M.B.W. back into the room further hobbles the State's position.

The State urges that we be guided by McRae, in which the court held that a protective sweep of McRae's motel room was constitutionally permissible:

> The circumstances here justified a protective sweep of the room. Officers did not know who was in the room until McRae answered; believed that McRae was accompanied by at least one, if not two, accomplices; and knew that the perpetrators were armed. Police were already visible to McRae and whoever might have been in the room when she opened the door; therefore, turning away and leaving to seek an arrest or search warrant would have been unreasonable in light of the officers' knowledge that the perpetrators were armed. Given these circumstances, the officers' fear for their safety was reasonable. Because police had probable cause that McRae had committed an armed robbery and because exigent circumstances (i.e. officer safety) existed, police acted lawfully in removing McRae from the threshold of her motel room and conducting a protective sweep.

194 So. 3d at 529-30.

Critically, "[a]t the time law enforcement knocked on McRae's door, police knew there were at least two other perpetrators and a possible firearm used in the armed robbery" they were investigating. Id. at 527. In contrast, none of the officers in M.B.W.'s case furnished any testimony suggesting they had any reason to believe any of the occupants might be armed or dangerous or that any occupant might use force to prevent M.B.W.'s arrest.

Without any evidence that the protective sweep was necessary for officer safety or the preservation of evidence, we are left to surmise that entry into the hotel room was done as a matter of routine practice. This was impermissible. See Mestral, 16 So. 3d at 1018 ("In this case the officers entered the residence as part of a routine practice and not on the basis of any articulable facts which would warrant a reasonable belief that there was any dangerous individual inside who posed a threat to those on the arrest scene.").

Further, recall that law enforcement officers went to the hotel to arrest M.B.W. for a misdemeanor domestic battery charge. The State offered no evidence of what, if anything, the officers sought to protect in their search from imminent destruction as it relates to the battery. See Lee, 856 So. 2d at 1138 ("In order to justify a warrantless entry into a residence to prevent the imminent destruction of evidence, the police must have an *objectively reasonable* fear that the evidence will be destroyed before a warrant can be obtained."). Only after making the warrantless entry did law enforcement officers observe the scale containing cocaine and a backpack containing drugs.

Because the law enforcement officers lacked a reasonable, articulable suspicion that entry into the hotel room was necessary, we cannot condone their

- 19 -

warrantless entry under the guise of a "protective sweep." Cf. State v. Futch, 715 So. 2d 992, 994 (Fla. 2d DCA 1998) ("[T]he subsequent warrantless search of Futch's motel room after his arrest was improper. A warrantless search incident to a lawful arrest is limited to the area within the immediate control of the defendant. Here, Futch was arrested outside his room. The State does not argue that there were any exigent circumstances that would allow a warrantless search of Futch's entire motel room. Law enforcement could have obtained a warrant after the arrest." (citations omitted)).

### Conclusion

We affirm the trial court's suppression order.

Affirmed.


VILLANTI and ATKINSON, JJ., Concur.